UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

      Plaintiff,

  v.

RAY DAVIS,

      Defendant.
_____

REPORT & RECOMMENDATION

18-CR-6119CJS

## PRELIMINARY STATEMENT

By Order of Hon. Charles J. Siragusa, United States District Judge, dated August 7, 2018, all pretrial matters in the above-captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 23).

On August 7, 2018, the grand jury returned a nine-count indictment against defendant Ray Davis ("Davis") and co-defendant Marcus Brown ("Brown").  (Docket # 22).  Count One charges Davis with conspiring with Brown and others from June 2015 through October 2015 to commit sex trafficking, in violation of 18 U.S.C. § 1594(c).  (*Id.*).  Counts Two and Three charge Davis with sex trafficking of minors, in violation of 18 U.S.C. §§ 1591(a), 1591(b)(1), 1591(b)(2), 1591(c), and 2.  (*Id.*).  Counts Four and Five charge Davis with production of child pornography, in violation of 18 U.S.C. §§ 2251(a), 2251(e), and 2.  (*Id.*).  Counts Six and Seven charge Davis with distribution of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A), 2252A(b)(1), and 2.  (*Id.*).  Counts Eight and Nine charge Davis with

possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), and 2. (*Id.*).

Currently pending before the Court for report and recommendation are Davis's motions to dismiss the indictment on the grounds of insufficiency of the evidence and double jeopardy and to suppress identification evidence. (Docket # 43-1 at ¶¶ 33-34, 39-42, 67).[1] For the reasons discussed below, I recommend that the district court deny Davis's motions.

## REPORT & RECOMMENDATION

**I.    Dismissal of the Indictment**

I turn first to Davis's motion to dismiss the indictment on two separate grounds. First, Davis maintains that the indictment should be dismissed on the grounds of insufficiency. (*Id.* at ¶¶ 33-34). Specifically, Davis contends that the government may have elicited grand jury testimony from a confidential informant "who was operating under the threat of a criminal prosecution." (*Id.* at ¶ 33). He further speculates that the witness' interest in avoiding prosecution by cooperating with the government may not have been disclosed to the grand jury. (*Id.*).

There is a presumption that grand jury proceedings are lawful and regular, *United States v. Torres*, 901 F.2d 205, 232 (2d Cir.) (quoting *Hamling v. United States*, 418 U.S. 87, 139 n.23 (1974)), *cert. denied*, 498 U.S. 906 (1990), *abrogated on other grounds by United States v. Marcus*, 628 F.3d 36, 41 (2d Cir. 2010), and disclosure of grand jury proceedings is available only by order of the Court. Fed. R. Crim. P. 6(e). A party seeking disclosure bears the burden of

---

[1] Davis's omnibus motions sought a variety of other relief. (Docket # 43-1). The other issues raised by Davis's motions were decided by the undersigned or resolved by the parties in open court on January 9, 2019. (Docket # 49).

establishing a "particularized need" or "compelling necessity" for such disclosure that outweighs the policy of grand jury secrecy. *Douglas Oil Co. of Cal. v. Petrol Stops Northwest*, 441 U.S. 211, 222-24 (1979); *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959); *In re Rosahn*, 671 F.2d 690, 695 (2d Cir. 1982). Unspecified allegations of impropriety or mere speculation are not sufficient to satisfy this heavy burden. *United States v. Calandra*, 414 U.S. 338, 345 (1974). Therefore, "review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct." *United States v. Torres*, 901 F.2d at 233.

Moreover, speculation that the grand jury was improperly instructed is insufficient to overcome the rule of secrecy in grand jury proceedings that is embodied in Fed. R. Crim. P. 6(e). *See*, *e.g.*, *United States v. Donald*, 2009 WL 270181, *6 (W.D.N.Y.) (speculation about inadequacy of jury instructions insufficient to invade grand jury secrecy), *report and recommendation adopted by*, 2009 WL 960209 (W.D.N.Y. 2009), *aff'd*, 417 F. App'x 41 (2d Cir. 2011); *United States v. Jailall*, 2000 WL 1368055, *2 (S.D.N.Y. 2000) (rule of secrecy, which can only be overcome by a showing by the defendant that grounds exist to dismiss the indictment based upon matters that occurred in the grand jury, applies to legal instructions provided to the grand jury). Davis's motion is based solely upon speculation. Speculation is no more a basis to justify dismissal of the indictment than it is to overcome the presumption of grand jury secrecy.

Moreover, it is well-established that an indictment that is valid on its face cannot be dismissed on the ground that it is based on inadequate or insufficient evidence. *United States v. Williams*, 504 U.S. 36, 54 (1992); *United States v. Calandra*, 414 U.S. at 345; *United States v. Casamento*, 887 F.2d 1141, 1182 (2d Cir. 1989), *cert. denied*, 493 U.S. 1081 (1990). The indictment here is sufficient on its face, and I recommend that the district court deny the motion

to dismiss on the grounds of insufficiency. The time to advance a motion based on insufficiency of the evidence is after the government has presented its case at trial. *See*, *e.g.*, Fed. R. Crim. P. 29(a); *United States v. Gambino*, 809 F. Supp. 1061, 1079 (S.D.N.Y. 1992).

In a single paragraph, Davis also seeks dismissal of the indictment on the grounds of double jeopardy, maintaining that he "was prosecuted in New York State Supreme Court before the Hon. Alexander R. Renzi in a matter that went to trial." (Docket # 43-1 at ¶ 67). Davis has provided no other information regarding the state court prosecution, including, for example, the charges that he faced. Given that absence of information, I provided Davis an opportunity to supplement his motion by February 4, 2019 (*see* Docket # 49), but he did not do so and confirmed in court on February 20, 2019, that he does not believe he has a legal basis for the motion at this time (*see* Docket # 54 at 38). Accordingly, given the absence of any facts in the record to justify the relief sought, I recommend that the district court deny Davis's motion to dismiss the indictment on the grounds of double jeopardy.

## II.     The Photographic Identification Procedure

I turn next to Davis's motion to suppress evidence of a photographic identification. (Docket # 43-1 at ¶¶ 39-42).

### A.     Background

On February 20, 2019, this Court conducted a bifurcated *Wade* hearing, considering at this time only whether the identification procedure utilized was unduly suggestive.[2] (Docket # 53). At the hearing, the government called Department of Homeland

---

[2] A *Wade* hearing refers to a hearing held pursuant to *United States v. Wade*, 388 U.S. 218 (1967), to determine whether an out-of-court identification resulted from an impermissibly suggestive procedure and, if so, whether it is independently reliable.

Security Special Agent Glenn Erny ("Erny") to testify about the identification procedures he conducted as part of the investigation leading to the charges against Davis in this case. (Docket # 54 at 13-36).[3] Erny testified that he conducted two photographic array identification procedures – the first on November 30, 2017 (the "November 2017 Identification") and the second on February 6, 2018 (the "February 2018 Identification"). (Tr. 16, 25). Erny met with a different witness each time (Tr. 16, 25), and each witness identified Davis's photograph from the six-photograph array the witness was shown (Tr. 22-24, 27). Copies of the same array were shown to each witness. (Government's Exhibits ("G. Exs.") 1, 2).

At the hearing, prior to Erny's testimony, Davis's counsel raised an issue concerning a prior identification made by the November 2017 witness. (Tr. 3-4). Specifically, defense counsel indicated that an earlier photographic identification procedure had been conducted with the same witness by Investigator Wengert ("Wengert") of the Rochester Police Department on October 21, 2015 (the "October 2015 Identification").[4] (Tr. 3-4). Wengert is now deceased. (Tr. 4-5). According to the government, Wengert's identification procedure had been conducted in the course of a separate, state investigation of allegations that Davis had raped the witness, which subsequently resulted in Davis's conviction. (Tr. 8). Review of the array used in the October 2015 procedure reflects that the witness identified Davis as the suspect. (*See* D. Ex. A).

Davis argues that the government "has to show that [the October 2015 Identification] with law enforcement did not prejudice the victim's second identification of the

---

[3] The transcript of the February 20, 2019 hearing shall be referred to as "Tr. __." (Docket # 54).

[4] Davis initially indicated that the earlier identification procedure had occurred on October 21, 2017. (Tr. 4). The government responded that the procedure actually had occurred on October 21, 2015 (Tr. 7-8), and provided a copy of the array that was used by Wengert, which is dated October 21, 2015 (Defendant's Exhibit ("D. Ex.") A).

5

photographic array of the 28th of November of 2017." (Tr. 4). In other words, Davis contends that the government has to prove that the October 2015 identification procedure did not taint the November 2017 Identification.

In response, the government emphasizes that Wengert's investigation related to New York State rape charges against Davis – a prosecution separate from the investigation and prosecution of the pending federal charges. (Tr. 8-9). The government also represents that evidence of the rape is "[n]ot necessarily" part of the government's proof of the pending federal sex trafficking charges. (*Id.*). In addition, the government points out that the photographs of Davis in the two arrays are different. (Tr. 11).

Following the hearing, the Court permitted Davis to submit further briefing concerning the relevance, if any, of the October 2015 identification procedure to the reliability of the November 2017 Identification. (Tr. 11-13). Davis did not submit any supplemental briefing.

B. **Discussion**

Evidence of an out-of-court photographic identification will be suppressed under the due process clause if "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). In determining whether to exclude evidence of a pretrial identification, a court must first consider whether the identification procedure was unduly suggestive. *Id.* To decide whether a photographic array is unduly suggestive, a court should consider several factors including "the size of the array, the manner of presentation by the officers, and the array's contents." *United States v. Maldonado-Rivera*, 922 F.2d 934, 974 (2d Cir. 1990), *cert. denied*, 501 U.S. 1233 (1991). Specifically, the court must consider "whether the picture of the accused . . . so stood out from all of the other photographs as

6

to suggest to an identifying witness that [the accused] was more likely to be the culprit." *Jarrett v. Headley*, 802 F.2d 34, 41 (2d Cir. 1986) (internal citations and quotations omitted).

If the identification procedure was unduly suggestive, the court must proceed to determine whether the identification nevertheless possesses "sufficient aspects of reliability." *United States v. Bubar*, 567 F.2d 192, 197 (2d Cir.) (citing *Manson v. Brathwaite*, 432 U.S. 98, 109-17 (1977)), *cert. denied*, 434 U.S. 872 (1977). "Even if the procedure was unnecessarily (or impermissibly) suggestive . . .[,] a district court may still admit the evidence 'if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability.'" *United States v. Bautista*, 23 F.3d 726, 729-30 (2d Cir.) (footnote omitted) (quoting *United States v. Simmons*, 923 F.2d 934, 950 (2d Cir.), *cert. denied*, 500 U.S. 919 (1991)), *cert. denied*, 513 U.S. 862 (1994).

Davis's challenge appears to be based on the fact that the same witness who identified a photograph of Davis in 2015 was shown a second array with another photograph of Davis two years later. Davis appears to be the only person who was depicted in both photo arrays, and his photograph is in the same position in both photo arrays – the middle photograph of three in the top row. (*See* Tr. 22, 27; G. Exs. 1, 2).

Several factors lead this Court to conclude that the witness's October 2015 identification did not taint her November 2017 identification. As an initial matter, the inclusion of Davis's photograph in two separate photo arrays is not, standing alone, unduly suggestive. *See United States v. Concepcion*, 983 F.2d 369, 379 (2d Cir. 1992) ("[n]or does the fact that a suspect's picture was placed in a second array after a witness has failed to select anyone from the first array automatically make the second array unduly suggestive"), *cert. denied*, 510 U.S. 856 (1993); *United States v. Williams*, 688 F. App'x 895, 897 (11th Cir. 2017) ("[t]hat [defendant]

7

was the only person who appeared in both photographic spreads did not render the identification procedure unduly suggestive[;] . . . we reject that the inclusion of [defendant's] picture in two separate photographic spreads was inherently unconstitutionally suggestive") (collecting cases).

Moreover, the photograph of Davis used by Wengert in 2015 is not the same photograph used by Erny in 2017. (*Compare* D. Ex. A *with* G. Ex. 1). In 2015, Davis is depicted wearing a green shirt with short hair. The other men in the 2015 array have short hair. On the other hand, Davis is depicted in the 2017 array wearing a white and black hooded sweatshirt and has longer hair. The other men in the 2017 array also have longer hair than the men in the 2015 array. The fact that Davis's two photographs are relatively different from each other favors a finding that the November 2017 Identification was not unduly suggestive. *See*, *e.g.*, *United States v. Williams*, 688 F. App'x at 897 ("[b]ecause the two photographs of [defendant] bear little resemblance to each other, we conclude it is highly unlikely that [the victim] selected [defendant's] photograph in the second spread based on his memory of the photo from the first spread").

In addition, the substantial period of time – more than two years – between the October 2015 Identification and the November 2017 Identification – weighs against suppression. Although not entirely clear from the record, it is reasonable to infer that the photographs of Davis in the two photo arrays are from different time periods. *See*, *e.g.*, *United States v. Carter*, 410 F.3d 942, 949 (7th Cir. 2005) (characterizing three-month period between photographic identification procedures to be a "substantial passage of time"; "as we have previously concluded, there is nothing per se impermissible about placing the same suspect in two different identification procedures[,] especially where there is a substantial passage of time between the two showings") (internal quotations omitted); *United States v. Donaldson*, 978 F.2d 381, 386-87

(7th Cir. 1992) (identification procedures not unduly suggestive; "[t]he only similarity is the repetition of [defendant's] picture in the two arrays[;] [b]ut as we have discussed, the pictures were taken three years apart and bear little resemblance to each other").

Finally, the fact that Davis's photograph occupies the same position in the two arrays does not compel a finding of suggestiveness. *See*, *e.g.*, *United States v. Carter*, 410 F.3d at 949 (rejecting defendant's argument that the placement of his photo in the same position in two separate arrays was unduly suggestive; "[defendant] makes these assertions without citation to any authority or any evidence beyond the array itself[;] [t]hus . . . his placement in the bottom-center position does not tarnish the array").

Although not specifically challenged by Davis, neither the instructions given by Erny to either of the witnesses in the November 2017 and February 2018 procedures, nor the photographs in the arrays themselves, were unduly suggestive. Erny credibly testified that he gave instructions to each witness prior to showing the array and did not suggest which photo the witness should select. (Tr. 19-20, 23). Erny explained that he told each witness that a photographic array would be displayed, that the witness may or may not recognize someone in the array, and that the witness should identify by number the photograph of anyone the witness recognized. (Tr. 20, 26). Erny's interactions with the witnesses were not unduly suggestive. *See United States v. Williams*, 2015 WL 429087, *17 (W.D.N.Y.) (manner of presentation of array not unduly suggestive where it did not suggest to the witness which, if any, photograph to select), *report and recommendation adopted by*, 2015 WL 3454430 (W.D.N.Y. 2015); *United States v. Guzman*, 2015 WL 774211, *7 (W.D.N.Y. 2015) (same).

Nor is there anything about the six photographs in the arrays that appears unduly suggestive. Davis's photograph is one of six photographic images of different African-American

9

men of roughly similar ages.  All are head shots of men with approximately the same length hair and similar physical characteristics.  *See United States v. Rijo*, 2009 WL 4406055, *4 (W.D.N.Y. 2009) (array not unduly suggestive where the six photographs depicted "men of similar age, complexion, build, hair color and eye color").

Accordingly, I recommend that the district court deny Davis's motion to suppress the photographic identification.

## CONCLUSION

For the above-stated reasons, I recommend that the district court deny Davis's motions to dismiss the indictment and to suppress identification testimony.  (Docket # 43).

                *s/Marian W. Payson*
                MARIAN W. PAYSON
                United States Magistrate Judge

Dated:  Rochester, New York
        May 1, 2019

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.[5]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See*, *e.g.*, *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated:  Rochester, New York
        May 1, 2019

---

[5] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).